Good morning, Your Honors. Stephen Brower for Plaintiff and Appellant, Inpress. Whenever I have the honor of hearing for this court, I try to keep in mind that you've not only gone through the briefs, but already have a mention of random. So I will try to focus on what I think might be something helpful for you to make points out of the briefs as I see the case. This case, I believe, is easily decided in favor of the appellant. A front-college Ninth Circuit precedent, I've only primarily heard that one case. There was financial management advisories, which was a 2007 decision of the Ninth Circuit. A panel, I wish Judge Rawlings could have the honor of sitting in the unanimous majority. The issue here is how to interpret a vividly ambiguous statement of the policy. I say vividly ambiguous because even the insurer does not contend that we should read it unambiguously. The formal information that you're discussing is clear in the language. Excuse me just a minute. This has been interpreted by courts, has it not? By state courts. No, this information has not been interpreted by any court. It's the United States and I can find on it. But the term relates, I think. The word related does not appear in this language. X7 is a dependent clause for one of six or seven restraining things. It's not the word related. It's not relevant to this case. All right. That's fine. I will point you already to it. But we should do it. Okay. The word related appears as a dependent clause modified for one of six convictions. So we're not talking about anything that's actually being interpreted here. We're talking about a balance of honors to base cities, which has been handled by the state court. And then financial management advisors in which the 9th Circuit were the first judge to apply on base cities and said he misunderstood base cities in the same way that we believe the Honorable Judge here misunderstood base cities. So we think the 9th Circuit precedent is clear in our favor. Let me turn it over to you, of course, if you don't know or don't refer to what was done below. From time to time, this is a de novo decision, not any of your work. The provision here, Your Honors, is uncovered fact number five, taken right from the policy. And let me read it to you, please. Two sentences long, but it's important. Wrongful act means any negligent act, error, or omission committed by our faculty insurer. A series of negligent acts, errors, or omissions that has as a common connection, tie, or link, any, etc., any, fact, circumstance, situation, event, transaction, cause, or a series of other effects, circumstances, situations, events, transactions, or causes, will be considered a single wrongful act. Now I am denying base cities and denying every case before me, Your Honor. But by analogy, you'll see that what we're playing here doesn't appear. It appears as any. As far as 1, 2, 3, 4, 5, 6, 7, 8, 9, 9 possible things that are the same facts could be the same, any facts, any circumstances, any situations, any events, and then it comes to any related facts that, the word related is not actually relevant here. It's used by courts. So that's the breadth of the clause. If you took that clause literally, one fact will always be the same. Impressed will be insured. Impressed will always be insured. In any claim, if ever submitted to this entire 50-year history with the insurance company, perhaps a 50-year history, am I being condemned? Am I going to do that? No. Beautiful. Base cities. Any other questions? To be honest with you, I don't really know what you're talking about. We have a definition of wrongful acts. As I understand it, the question in this case is whether these series of damages, acts, errors, or omissions, which, as I understand it, there were three different objects that were being printed on, but they were all being printed to create one package for one kind of shampoo for one company at one time. And the question is, do they have, as a common connection to highly core fact, any facts, circumstances, situations, and interest theories of related facts, circumstances. You can say related isn't there, but it is there. And, therefore, they are single wrongful acts. And it would be helpful if you could list the actual facts of the case and not a bunch of abstractions. Your Honor, I'll give you the actual facts. Your Honor, one of the facts is saying it's impressed was being insured. Inherently, one of these circumstances, an impressed will be insured in the future. And, Your Honor, I'm not even going to hand it to people who are in base cities. I'd like to discuss my case. What about the facts of this case? Oh, okay. I'll turn to the facts, Your Honor. The facts are undisputed. They're neither not or an act. And, as I said, let me refer you to undisputed fact number six, Your Honor, which would be to show undisputed fact as undisputed. If you look at track number five, they did not dispute our fact. It points out that there were three separate print projects on different machines. By different personnel, using a different printing process, and different procedures on different days. For other, Your Honor, undisputed fact number nine, which is undisputed, indicates at least 20% of the whole box would be done. 80% of the silver box would be done. And 100% of the trading would be done. And if you look at the 9th Circuit's reversal of judgment, what they said was the following in financial management guidance. And this is on the last page. It was significant to the Bay City's court that the attorney's two acts of malpractice caused a single injury and that neither act would have caused the same injury. Now, with the molding of the 9th Circuit, well, here's what the Bay City's doesn't apply where a different injury occurred. Here, there's a different injury on silver boxes, only 7% of that. A different injury on gold boxes, only 40% of that. A different injury on the trade, 100% of that. Different machines. As far as the company that ordered the materials concerned, they needed all three of these things in order to package their shampoo and go to their trade show. So, if one of them hadn't been any good, they'd still have the same problem. Right? No, because if only 4% of the silver boxes were bad, the main injury was only before they could have used 96% of the silver boxes. Right, but they couldn't have used the inserts, so they couldn't have packaged their shampoo. Your Honor, we're looking at this as being part of the policy language, not to get it, but of course, it's written. If you are now arguing prior to that, because, of course, you're right, and you're making the decision of what is the law now, the prior 9th Circuit said that the question is not the result. The question is whether the same injury would have resulted. Time out, though. Let me see if we can get it. This is a different way. I mean, you're unsurprisingly focusing on the differences, but the policy asks about the related facts. So, there are some things that are related here, right? As Jeff Berzahn points out, they're all for the same client. They're all for the same trade show. They're for the same overall packaging. And that much as those things are the same for all, what you call three different losses, aren't they? Three different things. Right? There were A's, there were S's. And the 9th Circuit, Your Honor, There it is. Isn't it right, isn't it correct that the things that you refer to as different losses, they all involved one packaging for a single trade show, and the packaging was all part of a single whole. There were parts to it. There were inserts and things like that. It was all part of a single whole. Isn't that right? No. It's not right. What's not right about it? I didn't ask about purchase orders. I asked about how they were being used. Didn't they relate to a single trade show and all the same set of packaging that was going to be used for the shampoo product for the trade show? Why isn't that enough? Why aren't those related facts within the meaning of the policy? I mean, there's nothing that says it has to be six related facts or eight related facts or ten related facts. It just says related facts. Right. It says one isn't enough. Yeah. And my point is, one is that the impress was the insurer, and that's not being vanguard because in the right sort of case, they set a scenario with the same attorney. I mean, I get that if you had losses that, you know, one of them happened in 2014 and one of them happened in 2017 and they were for the same customer, you know, that that probably wouldn't be enough, but that's not what we're talking about here. So it would be helpful if you could just, again, focus on what we are talking about here rather than on these hypotheticals that really don't have much to do with it. Charlie, you talked about insurance language, but my insurance language was would the same thing have happened with the exact same thing that had happened with any of them? Remember, this customer is a nominee in the customer yard, so their trade shows are open. This insurance cover impresses cost of redoing work. That's what this insurance was for, and they're not disputing that. So initially, it doesn't matter what the customer put up, and what they did with their trade show. They're open. It doesn't matter if the customer was or wasn't happy. They're open. The question is, would the claim amount have been the same if they'd only messed up the silver boxes? No. All right. Would it have been the same if they'd only messed up the inserts? Yes. No. The inserts were only part of the cost. They didn't need the boxes at all. Well, I know they're only part of the cost, but in terms of the client, they didn't have any packaging they could use for their shampoo. But there's no coverage for the client's box, right? Well, I understand that, but in terms of what the injury was to – what you're covering is the client's – the cost to the printing company of reimbursing the client. So the client's injury does matter because that's what you're covering. No, it does not reimburse the client. It reimburses the company for the cost of reimbursing the client. No, they don't reimburse the client. They deliver the client the boxes the client wants. Well, okay, the cost of redoing what the client ordered, right? Yes, it's very rare. You can't find any other insurance item that aren't part of the cost. Since you're here extremely focused on the financial management case, what it says is that it was significant that the attorney's two acts of malpractice caused a single injury and that either act would have caused the same injury. And, again, it seems to me here that all of the errors ended up causing a single problem, which is these boxes weren't available. No, there was no problem. There were no compensations for anyone for the boxes not being available. Ninety-six percent of those silver boxes were available. They had a reprint of 4% of that on one day on one machine. If that had been filled inside your office, that would have been slammed for $20,000. They also had a problem with a different machine on a different day with a different group of new investigators. Different machine, different day, different group with the boxes. That caused that $96,000 damage. They had another slammed for a different machine on a different day on different things. Can I ask you a question? I have a question because I don't have it in front of me. There were two invoices, right, or two letters. What were they for? Were they for different numbers of the three objects, or were they for different objects? What was different about them? What were they for? In other words, what was for the boxes and what was for the inserts? Yes. On different days, not on different machines, but at different times. We mixed up a lot of different costs. The same interest group, Your Honor, the same interest group. The invoice in the record. Where is the invoice in the record? Can you tell me that? Our initial authority is that I cannot. I apologize, Your Honor, I don't have that in my notes. Oh, I'm told. I'm handed to ER 225. Okay. Thank you. Okay. We are about out of time, so if you want to observe a minute. I'll observe my one minute, Your Honor. Thank you very much. Thank you so much. Yes, sir. You're muted. You're muted. You're muted. We can't hear you. Being pleased to court, Mark Peterson, for Traveler to Property Casualty Company of America. All these questions have made it clear to me that the court sees that the focus on breaking this law into subparts is sophistry. The policy does not ask us if the law should be broken into subparts. The policy asks us whether there are commonalities, and the questions indicate that the court has already gotten to that. As I asked your comment, where the purchase order is, what he referred to as not the purchase order in his declaration, describing the purchase order, was just not described what was in each of the purchase orders. It's the purchase orders themselves somewhere in the record. Your Honor, I don't recall that, and I don't have it on my fingertips. I see. All right. What I do recall is it was not a clear division between the boxes and inserts in my recollection. The purchase orders together required about a half million boxes and a half million inserts. That doesn't matter. You insist to me, Your Grave, that there was really only one error. It was because at the very outset that was the language that was used. I forget what the language was. Coding error. And the company maintains that there were actually three distinct errors for the various objects. A, why do you keep saying there was only one error? And B, does it matter? It does not matter. I wanted to characterize it as a coding error. That is what the impressed people told travelers. They then took it back on in response to the motion. However, there's a summary judgment. So if what they said the second time is different than what they said the first time, then we have to look at the second one, even though Your Grave keeps repeating the coding error thing. Okay, so they said it under motion for summary judgment, but they didn't ground evidence. Paragraph 19 of Chief Seabrook's declaration declares that they told him that. And in response, they didn't provide a declaration by Mr. Soonian or Mr. Cohn who said it, saying, I didn't say that. They argued they didn't say that, but they didn't say that. They didn't put on evidence. I know, but I thought you were saying they didn't put any evidence on that there were actually three errors. They put on evidence that they said there was three errors. They put on evidence that there were three errors. They put on evidence that they characterized it as three errors. Judge Fitzgerald noted that it simply doesn't matter. In his word, he says, in effect, it may be those three things. Remember, they argue that it's three claims because of the color of the box, the color of the box of the insert, and then they argue that it's three claims because there's a foiling issue, a color issue, and a coding issue. And Judge Fitzgerald says, be that as it may, it just doesn't matter. So we jump to Judge Fitzgerald's language. So can you just say what the key similarities are, the related facts, or whatever they are, that make this one loss? Of course. Remember that we're not talking about the one loss as a shorthand that we're all using to pause the attestee to figure out whether it's a wrongful act. Okay, so let me rephrase the question. What are the similarities or related facts that make this one wrongful act? So you have one customer, GNS Global, that orders one set of packaging, one customer one set of packaging for one product shampoo for one trade show to be delivered over the course of four weeks. All of those things, each of those things is a commonality. So if it was just the same customer you're seeing, it would be enough since you just said each of those things is a commonality? You know, Judge Kennelly, I think that the more attenuated against, the harder it is to reach that conclusion. And Mr. Brower has set out a parade of horribles of things separated by years and both the same insurance and the like. In some of those cases, certainly the curator would be in a difficult position to apply that language under those facts. But Bay Cities and the Supreme Court tells us that ambiguity, where it exists, is context-specific. You don't imagine a situation in which the language would be ambiguous. They put your facts in front of you, on to the language, and you say, is this clear? Here it is very clear under these facts. You have such a collection of commonalities. So the curator has written this policy so that these cases, these kind of cases in which one can try to fracture it, you have clear guidance. And you don't have clear guidance when something is three years apart or what have you. You have to struggle with it, and that sometimes lays in the lap of the court. A question about the purchase orders. I know that nobody seems to know where they are on the record, but do you know what was in purchase order one and what was in purchase order two? My recollection, Judge Kennelly, is that there was not a clean break between one and the other. Do you think there were different numbers of all three related objects or one? I'm just not sure, but I do. It would be nice to know. Yeah. But it does seem that Mr. Brower has a point about the fact that if you took destroy most of them or a bunch of them. It's not destroying. What it's doing is making a limit, right? What it's saying is there's one wrongful act, and therefore there's a $100,000 limit. That's basically what we're talking about. Right? That's right. But it does say any negligent action or omission of a series that has any common connection to Ireland, any facts or circumstances, situation or event. So if you take it literally, it would seem to me if you have the same customer or if you have the same product for different customers or if you have the same error on a different product for different customers, it is incredibly expansive. And the question is, what's the limit on it? There is a limit, but we don't anywhere reach it or come near it. And in this case, Judge? I'll suppose that their version is correct. That is, that these were, because we have to suppose that for current purposes, that these were different errors on different days by different people. They happened to involve products that were going to the same customer at the same time. But the question is, and this is important, that it's the negligent act, error, or omission that has to be connected. So if the act, error, or omissions were completely different, which is what you're saying, why isn't that sufficient? Well, the second sentence of the oral language that we keep coming to is that if there is any facts, circumstances, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions, or causes that we consider the single wrongful act. So you have many of those things that are related to each other. You have, again, one customer, one set of product, one trade show. This mess came up because much of the expediting expense came up because it was not a trade show. There was a lot of product package to be delivered over the course of a few weeks. It's one large loss. You have to imagine also when Geness got the defective product, they didn't pick up the phone and call up and press and say, we have three losses here. See, this is what's important. That is not the language. It's not about the number of losses. It's about the number of negligent acts, errors, or omissions. A series of negligent acts, errors, or omissions. Although I was focusing my questioning on the loss to the customer, that's not what this language talks about. You're looking at common connections, ties, or links. I understand that, but we're talking about as to acts, errors, or omissions, not losses. Right. That's right. If any fact in the omission, any circumstance, any situation, any event, any transaction, this is one transaction, any clause, any series of related facts, all of those things get you capped out at one policy. That's it. This claim was paid. It was paid 100% within 30 days of demonstrating the loss. Remember the Bay Cities language that says we need not, however, be labeled the question of whether related is ambiguous in the abstract or in some hypothetical circumstance. That is not the question in this Bay Cities. The proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case. And it's just that this is an overwhelming set of commonalities, an overwhelming set of things that are related to each other. I mean, you could fracture this into more than a billion pieces if you'd seen every box and every insert. Is it different? Caused by different wrongful activities. For a flash second, the machine was just working on this one box for one instance. But that is what he's saying. He's saying that there were different objects, but there were different acts, different things went wrong at different times by different people. And we can assume that's true. It is on the acts. But on the objects, not on the injuries. We're not dealing with exclusion. We're dealing with a definition, right? It's a definition. All right. The definition. Sorry. Which limit decides how much coverage there is? Can I ask you a question? Try page 517. For the record? Yeah. I don't have it up here, but it might be where the POs are. Might help answer some of these questions, if that's right. Do we got a volume? Volume number three. Okay. So it looks like there are individual V inserts. Well, it's probably not worth our sitting here now, but we'll look at it. It seems to matter. It's just perhaps a matter of whether these things will be treated as a whole or individually. It looks like for our yesterday point, no. Let me get it quickly. Anyway, you have a few minutes left, so go ahead. If you look at page 517, the quantity column, you see 227,000 of something. 227,000 of something else and 227,000 of something else. Right? And so since there were about 550,000 boxes and 550,000 inserts, that doesn't add up to the million. And so it's a mishmash. And the balance of the order gets calculated at record 518. So it is part, as I've remembered, there's part one, and part of the order was in one PO, and part was in the other PO. It's not an entirely clear line between the gold, the black, the gold, the silver, and the inserts. Right? Otherwise, you have just a half million on one and a half million on the other, which you do not have. All right. So anything else? I mean, the real question is what's – I understand that there are a fair number of points of connection here. On the other hand, there is – the provision is clearly overwritten, and the question is how do we know that this is on one side of the line rather than the other? Well, Your Honor, there certainly would be difficult cases. I just think that this one has an overwhelming amount of related, under any reasonable interpretation, related facts, circumstances, and the like. This insurer did not have a reasonable expectation that he was going to have three losses for this one set of assets. Yes, different days. Yes, different machines. But it was one order. And so the district court said, I get that there is a different this and different that, and coiling and coating or whatever. It just doesn't change the result. The district court gave an extended and detailed and well-reasoned opinion. Travis asked the court to affirm it. How much money is in exchange? About $90,000. It's a price of truth. You're litigating over this, and it hasn't said it. All right. Thank you. Thank you, Your Honor. Thank you. Sir, you have one minute. Your Honor, is it now seen to be inevitable if a person reports back that the loan is not true? Let me remind you that I've disputed the digital, I've disputed fact number six, and that is not disputed by Travis. It is from three different days, three different machines, three different processes, three different crews, three different hours. That is un-disputed, and there was a declaration of the president of our client as evidence for that undisputed fact. And that's the only thing that I'll make it my short time, Your Honor, is I would need to ask that as you consider this case, you look at financial management advisers, the paragraph that begins, Aislinn contends that the scrimmage has done or claims are illogically related under the teaching of Bay Cities. That, as a woman says, is the critical factor. But it doesn't say what the limits of this are. It says this one's not like Bay Cities, but it doesn't say if something's in the middle, whether or not that, it doesn't say that Bay Cities is the limit of what the logical relationship means. It doesn't say that's the end of the story. So it's not terribly helpful. It is from Bay Cities, but said that what mattered was that you had 183 or more than one. And because we had different dollar amounts on different claims, this is not like a malpractice, one malpractice, one attorney, one judge. This was three different amounts. There's three different reviews on three different days. But I got it right. I was not going to ask you other questions. I just wanted to get that on first attention. All right. The case of Impress Communication v. Trevor's Property. Casually Company is submitted.
judges: BERZON, RAWLINSON, Kennelly